IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MARCIA LANING,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:15-cv-75

Magistrate Judge Michael J. Newman
(Consent Case)

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THIS CASE TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR AN IMMEDIATE AWARD OF BENEFITS; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

This Social Security disability benefits appeal is presently before the undersigned for disposition based upon the parties' consent. Doc. 13. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 10), the Commissioner's memorandum in opposition (doc. 11), Plaintiff's reply (doc. 14), the administrative record (doc. 9),[1] and the record as a whole.

I.

**A.**    **Procedural History**

Plaintiff filed for DIB alleging a disability onset date of August 13, 2003. PageID 204-05. Plaintiff claims disability as a result of a number of alleged impairments

---

[1] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

including, *inter alia*, gastroesophageal reflux disease and major depressive disorder. PageID 46.

After initial denials of her application, Plaintiff received a hearing before ALJ Joseph P. Donovan, Sr. PageID 65-109. The ALJ issued a written decision on September 9, 2013 finding Plaintiff not disabled. PageID 44-58. Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.

2. The claimant has not engaged in substantial gainful activity since August 13, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: Gastroesophageal Reflux Disease, Major Depressive Disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform medium work as defined in 20 CFR 404.1567(c) except the claimant can never climb ladders, ropes, and scaffolding; avoid all unprotected heights, hazardous machinery, and industrial vibrations; frequently interact with the general public, supervisors, and coworkers; stay on-task for at least 98% of the work day with no more than a 2% loss in productivity; and frequently respond to routine changes in the work setting.

6. The claimant is capable of performing past relevant work as a machinist and tax preparer. This work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 13, 2003, through the date of this decision (20 CFR 404.1520(f)).

PageID 46-57.

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 35-37. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir.

2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

  **B.**  **Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 46-55. Plaintiff, in her Statement of Errors, extensively summarizes the record evidence. Doc. 10 at PageID 499-505. The Commissioner, in response to the Statement of Errors, refers the Court to the ALJ's recitation of relevant evidence and offers no objections to Plaintiff's summary of relevant facts. Doc. 11 at PageID 517-18. Accordingly, except as otherwise noted in this Decision and Entry, the undersigned incorporates the ALJ's recitation of the evidence as well as Plaintiff's undisputed summary of the evidentiary record. Where applicable, the Court will identify the medical evidence relevant to this decision.

## II.

  **A.**  **Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id*. at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

**B.     "Disability" Defined**

To be eligible for DIB benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id*.

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1.     Has the claimant engaged in substantial gainful activity?

2.     Does the claimant suffer from one or more severe impairments?

3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's RFC, can he or she perform his or her past relevant work?

5.     Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred by: (1) improperly weighing the opinions of her treating sources; (2) deferring to the opinions of record-reviewing physicians without meaningful explanation; and (3) limiting his analysis of her right upper extremity impairment. Doc. 10 at PageID 505. Finding that the ALJ erred in analyzing the opinion of long-time treating psychologist Diana G. Ackerley, Ph.D. and the opinions of record-reviewers Vicki Warren, Ph.D. and Tonnie Hoyle, Psy.D -- and that an immediate award of benefits is proper on the basis of Dr. Ackerley's controlling opinion that is consistent with the substantial evidence of record -- Plaintiff's remaining arguments need not be addressed.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x

5

377, 384 (6th Cir. 2013) (citation omitted) (alterations in original).  This requirement is known as the "treating physician" rule.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted).  Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406.  Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion."  *Blakley*, 581 F.3d at 406-07.  "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Id*.

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c).  In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their

6

source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Dr. Ackerley treated Plaintiff weekly between 1997 and 2010 and, thereafter, bi-weekly through the time of the ALJ's decision in September 2013. *See* PageID 493. In December 2012, Dr. Ackerley issued a report concerning Plaintiff's mental limitations. *See* PageID 416-17. After listing a number of clinical findings -- such as Plaintiff's blunted affect, pressured speech, poor insight, poor concentration, inability to read more than a few sentences, low frustration tolerance, poor memory, and confusion under stress -- Dr. Ackerley opined that Plaintiff would be unable to interact with co-workers and supervisors; could not tolerate stress in the workplace, and decompensates under minimal daily stressors. *Id*. Dr. Ackerley's report was accompanied by a letter detailing Plaintiff's mental health history, family history, and her treatment dating back to her first diagnosis of depression in 1979. *See* PageID 420-23.

In May 2013, Dr. Ackerley completed a medical impairment questionnaire. PageID 489-91. In that questionnaire, Dr. Ackerly again listed a number of clinical findings -- such as slow speech, impaired memory, impaired attention and concentration, and impaired insight and judgment -- and opined that Plaintiff is moderately limited in maintaining social functioning;[2] and markedly limited in her activities of daily living, her ability to maintain concentration, persistence and pace, and her ability to withstand episodes of deterioration or decompensation in general (not just in the workplace setting). *Id*. Dr. Ackerley also opined that, because of her mental impairments, Plaintiff would be absent from work more than three times per week. *Id*.

In July 2013, Dr. Ackerley again submitted a letter to the Commissioner that was substantially similar to her letter of December 2012. PageID 493-97. The July 2013 letter,

---

[2] Whereas "moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App's 977, 980 (6th Cir. 2011), "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(C), *et seq*.

7

however, detailed an incident in January 2013 -- when Plaintiff was pulled over by the police and allegedly mistreated physically and psychologically. PageID 495. Dr. Ackerley reported that such incident "re-traumatized" Plaintiff and "has set her back in any progress . . . made to date." *Id*. In that letter, Dr. Ackerley stated that Plaintiff continued to "work[] on the current, as well as the past Post Traumatic symptoms to stabilize her," but that Plaintiff's "functional limitations are extreme at this time and her prognosis continues to be guarded." *Id*.

The ALJ gave Dr. Ackerley's opinion "no weight" for three reasons: (1) she "relied heavily on the claimant's past mental health treatment history and findings"; (2) her statements concerning Plaintiff's ability to interact socially with others were "incongruent"; and (3) while she made note of the January 2013 incident in her July 2013 letter, she made no reference of it in the May 2013 questionnaire and did not note Plaintiff's Global Assessment of Functioning Score ("GAF").[3] PageID 54.

The Court first notes that, while the ALJ mentioned the concept of "controlling weight" in weighing medical source opinions generally, it is not clear from his written decision that he actually engaged in the "controlling weight" analysis, *i.e.*, whether the opinion "is well-supported by

---

[3] GAF is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM-IV"). "The most recent (5th) edition of the Diagnostic and Statistical Manual of Mental Disorders does not include the GAF scale." *Judy v. Colvin*, No. 3:13cv257, 2014 WL 1599562, at *11 (S.D. Ohio Apr. 21, 2014); *see also* Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013) ("DSM-V") (noting recommendations "that the GAF be dropped from [DSM-V] for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice"). As set forth in the DSM-IV, however, a GAF of 31-40 indicates "[s]ome impairment in reality testing or communication," or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (*e.g.*,…avoids friends, neglects family, and is unable to work)." DSM-IV at 34. A GAF score of 41-50 indicates "[s]erious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." *Id*. A GAF score of 51-60 is indicative of "[m]oderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id*. A GAF score of 61 to 70 indicates "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia)" or "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well." *Id*. A GAF score of 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)." *Id*.

8

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2). PageID 54. Although all of Dr. Ackerley's reports detail numerous clinical findings associated with Plaintiff's mental impairments, the ALJ did not determine whether those clinical findings are consistent with the other record evidence. *Id*.

Further, other than a couple of purported inconsistencies in Dr. Ackerley's reports -- which the Court will address *infra* -- "the ALJ does not identify the substantial evidence that is purportedly inconsistent with Dr. [Ackerley's] opinions" as is required under a controlling weight analysis. *Id.*; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The only other significant mental health records noted by the ALJ elsewhere in his RFC analysis are the reports of examining psychologist Donald Kramer, Ph.D. and the record-reviewers. *See* PageID 55. As noted by the Sixth Circuit, such evidence is not sufficient, in and of itself, to justify not affording controlling weight to a treater. *Gayheart*, 710 F.3d at 377. As noted by the Court in *Gayheart*:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id*. Accordingly, the Court finds error with the ALJ's failure to meaningfully explain his controlling weight analysis.

The Court also finds error in the reasoning given by the ALJ. First, substantial evidence does not support the ALJ's conclusion that Dr. Ackerley relied "heavily on the claimant's past mental health treatment history and findings" when giving her opinion. PageID 54. While Dr. Ackerley did provide a detailed history of Plaintiff's mental health treatment dating back to 1979,

9

she also, as noted above, detailed clinical findings observed over her own fourteen years of treating Plaintiff at least bi-weekly. *See* PageID 416, 490.

Second, insofar as Dr. Ackerley's reports could be read as "incongruent" with regard to her findings about Plaintiff's ability to interact socially, it is not clear how such incongruence -- assuming, *arguendo*, incongruence exists -- merits a complete rejection of her opinion. In addition to Plaintiff's limitations in social functioning, Dr. Ackerely expressed significant concern about Plaintiff's ability to concentrate and persist under normal workplace pressures, and her ability to withstand significant decompensation when exposed to workplace stressors. *See* PageID 416-17, 489-91. Plaintiff's primary care physician, Robert Gardner, D.O., consistently opined that she has "significant problems with anxiety and/or depression which would markedly limit her ability to withstand the stresses and pressures of ordinary work activity." *See* PageID 493. Notably, even examining psychologist Donald Kramer, Ph.D. expressed concern about Plaintiff's ability to "deal[] with work pressure[,] especially over extended periods of time." PageID 373. The ALJ's critique does not address these concerns and offers no explanation or citation to evidence supporting his conclusion that Plaintiff is capable of staying "on-task for at least 98% of the work day with no more than a 2% loss in productivity" or is capable of maintaining regular work attendance without limitation. *See* PageID 49, 54-55. This lack of explanation and failure to note the consistency of these medical opinions is error.

Third, it is not clear to the undersigned how Dr. Ackerley's failure to note the January 2013 incident or a GAF score in her May 2013 report undermines the entirety of her opinion. *See* PageID 54. With regard to Dr. Ackerley's failure to "include an explanation about [the January 2013)] incident" in her May 2013 report, the Court notes that the report was prepared on a preprinted questionnaire and mention of the January 2013 incident would not be responsive to any of the specific areas of inquiry preprinted thereon. *See* PageID 489-91.

10

Further, insofar as the ALJ sought some corroboration of the low GAF score of 42 noted by Dr. Ackerley in her August 2013 letter, a GAF score is merely a "snapshot of a person's 'overall psychological functioning' at or near the time of evaluation[,]" and its relevance "is isolated to a relatively brief period of time[.]" *White v. Colvin*, No. 3:13CV00171, 2014 WL 2813310, at *10 (S.D. Ohio June 23, 2014). In fact, courts have concluded that GAF scores have "little value in assessing disability." *Allen v. Comm'r of Soc. Sec.*, No. 2:09CV265, 2010 WL 1142031, at *10 (E.D. Va. Feb. 24, 2010) (citing *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). Thus, any GAF assessment given by Dr. Ackerley in May 2013 would have minimal probative value in determining her disability or in discrediting her specific opinion about Plaintiff's limitations. *See Mosley v. Comm'r of Soc. Sec.,* No. 3:14-cv-278, 2015 WL 6857852, at *5 (S.D. Ohio Sept. 14, 2015).

Finally, the ALJ's conclusory analysis of the "great weight" given to the record-reviewers exacerbates these aforementioned errors. Drs. Warren and Hoyle both provided opinions -- which appear limited to a consideration of whether Plaintiff's mental impairments meet the Listings criteria -- in which they conclude that Plaintiff's "current psych conditions do not pose more than minimal limitations on her ability to work." *See* PageID 115, 129-30. Notably, despite Plaintiff's extensive, at least bi-weekly, treatment relationship with Dr. Ackerley since 1998, both Drs. Warren and Hoyle, in giving their opinions, found that Plaintiff "is not in any treatment" for her mental impairments -- a statement that belies the substantial evidence of record. *Id.*

In giving the opinions of these record-reviewers -- as well as the record-reviewers opining about Plaintiff's physical limitations[4] -- "great weight," the ALJ's entire analysis is as follows:

> Each state agency consultant reviews the medical evidence of record to give
> an assessment as to the claimant's physical and mental abilities. Although

---

[4] The record also contains opinions from record-reviewing doctors William Bolz, M.D. and Rannie Amiri, M.D. who offered opinions about Plaintiff's physical limitations. PageID 118, 128.

> State agency consultants are non-examining, they are professionals in their field and well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security Act, as amended. Here, the State agency consultants found the claimant capable of a reduced range of medium work. Having considered the totality of the evidence, including records not available to the State agency consultant at the time of the assessment, the undersigned finds that the findings of the State agency consultants are entitled to great weight as they are generally consistent with the claimant's current level of functioning.

PageID 55. The ALJ makes no effort to specifically scrutinize any opinion of the record-reviewers and points to nothing in the record to support their "general consistency" with Plaintiff's "current level of functioning." *Id*. The ALJ's conclusory assessment of the record-reviewers' opinions thus fails to give a meaningful explanation of any of the required 20 C.F.R. § 404.1527(c) factors, and is error.

Based upon all of the foregoing, the Court concludes that the non-disability finding must be reversed as a result of the ALJ's failure to properly weigh medical source opinions regarding Plaintiff's mental health limitations.

## IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to order an award of benefits. Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Id*.

Here, proof of disability is overwhelming in light of Dr. Ackerley's opinion, which is supported by the opinion of treater Dr. Gardner and examiner Dr. Kramer. *See supra*. Given the

level of absenteeism opined by Dr. Ackerley -- in addition to the other marked limitations she noted -- Plaintiff is unemployable and thus disabled.  *See* PageID 105-06.

## V.

For the foregoing reasons: (1) the ALJ's non-disability finding is found unsupported by substantial evidence, and **REVERSED**; (2) this matter is **REMANDED** for an immediate award of benefits; and (3) this case is **TERMINATED** on the Court's docket.

**IT IS SO ORDERED**.


Date:   March 28, 2016                              *s/ Michael J. Newman*
                                                    Michael J. Newman
                                                    United States Magistrate Judge